Farrar & al. *v.* Eastman & al.

FARRAR *& al. vs.* EASTMAN *& al.*

| 10 | 191 |
| 95 | 64 |

A sale and conveyance of Proprietary lands by a Collector of taxes, thereto authorised by a vote of the proprietors, passed *March* 23, 1780, was held to pass no title, —*forty days* not having elapsed between the giving of the authority and the execution of it, pursuant to the *Provincial act of 26 Geo. 2. Anc. Char.*

If one receive a deed of several distinct and separate lots of land from one having no title, — cause his deed to be recorded, — and enter upon and occupy a part of *one* only of the lots, under his deed, — it will not constitute a *disseizin* of the true owner of the other lots, so as thereby to render his deed thereof to a stranger inoperative ; though it be a mere release without covenants.

Whether a tenant in common can be *disseised* by a stranger claiming his interest only, — *quære.*

TRESPASS *quare clausum fregit,* for cutting trees on lot *No.* 43, in 5th division of lands in the town of *Lovell.* The defendants pleaded the general issue, and also soil and freehold in one *Levi Stearns,* under whom they cut.

To maintain the action the plaintiffs' counsel read from the records of the Proprietors of *Lovell,* the acceptance of a Report of the lotting committee, dated *Sept.* 23, 1817, by which it appeared that lot 43 was drawn to the original Right of *Benjamin Ballard.* He also introduced and read the following

deeds, *viz. Benjamin Ballard* to *Samuel Farrar,* dated *Sept.* 22, 1819, and recorded *Feb.* 23, 1821, conveying all his right to lands in *Lovell* which descended to him from *Benjamin Ballard,* the original owner. *James* and *Ruth White,* and *Thomas* and *Rebecca Harrington,* and *Elias* and *Abigail Carter,* to said *Farrar,* dated *Aug.* 11, 1819, and recorded *Oct.* 4, 1819, conveying all their right to the share of *Benjamin Ballard,* the orginal proprieter, in said *Lovell* lands. It was proved that the several female grantees were heirs at law of said *Ballard,* and the male grantors, their husbands ; and that *Ballard* had been dead about forty years. The plaintiffs' counsel then read a deed from said *Farrar* to *Samuel Dwelley,* (who are the two plaintiffs,) dated *Jan.* 10, 1820, and recorded *Jan.* 23, 1821, conveying one moiety in common of said lot 43.

It was proved, that *Oct.* 4, 1819, *Farrar* entered upon said lot and took formal possession of it, and placed the initials of his own name and *Dwelley's* on certain monuments, said lot being at the time wild and uncultivated, except four acres in the possession of *Levi Stearns.*

The counsel for the defendants then read a deed from *John Knox,* as collector, to *William Knox,* of lot 43, dated *April* 5, 1780 ; and also a copy of a vote of said proprietors passed at a meeting held *March* 23, 1780, which was thus : " Voted, that " the collector be empowered to give deeds of the lands sold " for taxes." [On a former trial of this cause, as reported in 5 *Greenl.* 345, the foregoing vote was supposed to have been passed at a meeting held *Nov.* 10, 1779, but upon examination of the records it appeared that the meeting was held as above stated, *March* 23, 1780.] He then introduced and read the following deeds, *viz. : William Knox* to *Samuel Nevers,* of one half of a full Right originally granted to the heirs of *Benjamin Ballard,* dated *Dec.* 31, 1796, and recorded *Nov.* 3, 1798. *Samuel Nevers* to *Levi Stearns,* of one half of lot No. 43, dated *Feb.* 20, 1819, and recorded *Oct.* 9, 1819. *Joseph* and *Mary Brown* to *Josiah Stearns,* of three fourths of a right in Nos. 43 and 28, dated *May* 24, 1781, and recorded *March* 14, 1812. *Josiah Stearns* to *Samuel Stearns,* of all his right, being one fourth of Rights 28 and 43, dated *Dec.* 1, 1789, and re-

corded *Sept.* 19, 1811. *Samuel Stearns* to *Benjamin Webber*, of one half of Right 43, dated *Dec.* 29, 1795, and recorded *Nov.* 1, 1798. *Benjamin Webber* to *Levi Stearns*, of the same one half of Right 43, dated *Feb.* 20, 1819, and recorded *Oct.* 9, 1819.

It appeared that in the first division in 1780, *lot* 43 was drawn to *Right* 43. In the second and third divisions in 1783, *lots* 50 and 59 were drawn to *Right* 43. In the fourth division in 1792, *lot* 61 was drawn to *Right* 43. In the fifth division in 1817, *lot* 43 (the locus in quo) was drawn to *Right* 43.

It was proved that *Levi Stearns*, from 1813, had possessed about four acres of the lot in dispute, inclosed within fences; but none of the trees cut by the defendants were standing on these four acres. That *Benjamin Webber* had possessed lot 59, inclosed within fences, constantly since 1797. That *Nevers* mowed a meadow and cut the timber on lot 43 in first division. That one *Welch* occupied 5 or 6 acres of lot 61, about the year 1814. That *Nevers*, since 1804, had cut and improved on lot 50, and about 1813, had inclosed the meadow thereon within fences.

It was also proved that *Levi Stearns* never claimed any common land — that he lived on a lot adjoining, and got over on to the common land, which has since become lot No. 43 in the 5th division — and that he had cleared up the four acres *by permission of the proprietors.*

It also appeared from the Proprietor's records, that the sale of *Ballard's* Right was made *Nov.* 26, 1779. But the competency of the record to prove this fact was objected to by the counsel for the defendants.

If any of the objections made to the *defendants'* title should be considered fatal by the Court, the counsel for the defendants objected to the *plaintiffs'* title:

1. That at the time when *Farrar* took his deeds from the *Ballard* heirs, *there was an adverse seizin.*

2. That these deeds were void, because the taking of them was an act of *maintenance.*

3. That being deeds of naked release, they passed no title or seizin to *Farrar.*

4. That whatever may have been *Farrar's* title, there was an adverse seizin when *Dwelley* took his deed, and therefore no title passed to him.

If in the opinion of the Court the objections taken to *Knox's* deed ought not to prevail ; or if in their opinion, either of the objections taken by the counsel for the defendants, was sustained by the evidence ; the verdict, which was for the plaintiffs, was to be set aside and they were to become nonsuit ; otherwise judgment was to be rendered thereon.

*Longfellow*, for the defendants, argued in support of the positions taken at the trial in regard to the plaintiffs' title ; and in maintenance of the deed of *John Knox*, the collector, as establishing in his view, the title of the defendants, and cited the cases of *Green & al. v. Blake, ante;* and *Colman v. Anderson*, 10 *Mass.* 105.

*Fessenden & Deblois*, for the plaintiffs.

The opinion of the Court was delivered by

WESTON J. — When this cause was before us, prior to the last trial, the authority of *John Knox* to sell and convey the land of delinquent proprietors, was under consideration ; and it was sustained, for the reasons set forth in the opinion of the Court. 5 *Greenl.* 345. But upon examining the proprietors' records, it now appears, that the vote, under which he proceeded, in fact passed only thirteen days before the date of his deed to *William Knox;* although from an error in the copies, used at the former trial, it was supposed to have passed at an earlier period. It is apparent then, that between these dates, there could not have been time to give forty days' notice of the sale, in the manner prescribed by the provincial act of 26 *George* 2, *Anc. Charters*, 588. With every desire to uphold a transaction so ancient, which on a former occasion was carried as far, as legal principles would warrant, we feel constrained to decide, that the sale and deed of *John Knox* was not made in conformity with law.

But notwithstanding the failure of the defendant to sustain himself under that deed, several objections are taken by his

counsel to the title of the plaintiffs, predicated upon an adverse seizin. The force and effect of these objections depend upon the question, whether an adverse seizin existed, either when *Farrar* took his deeds from *Ballard's* heirs, or when he conveyed to the other plaintiff, *Dwelley.*

It may admit of question, whether a tenant in common can be disseised by a stranger, claiming his interest only. *Reading v. Royster,* 2 *Salk.* 423; *Ld. Raymond,* 829. In all cases, where there is a concurrent possession, the seizin is in him, who has the title. The possession of the other tenants in common, held for the benefit of all, would seem to defeat any attempt to create an adverse seizin, as against one. But certainly nothing short of an actual occupancy of part of the land held in common, with the claim of the right of the true owner, indicated by a deed from a party pretending title, or other equivalent notice to co-tenants and others, could have this effect.

The doctrine of disseizin, its effect and limitations, is laid down with great precision, in the leading case of the *Proprietors of Kennebec Purchase v. Laboree,* 2 *Greenl.* 275. It is there stated, that if a man enters upon a tract of land, under a deed duly registered, although from one having no legal title, and has a visible occupation of part of it only, the true owner is disseised of the whole tract. This tract must be continuous. The doctrine cannot be extended to detached parcels, of a part of one of which, the party may have actual possession. By no fair construction or intendment, could he be said to be in possession of the other parcels. It is the occupation and improvement, and not the deed alone, which creates the adverse seizin. The party entering by apparent title, and actually occupying part of the land, is deemed to be in possession of the whole tract, to which his deed extends.

The possession and occupation of all those, through or under whom *Levi Stearns* held, was of other parcels in severalty. With regard to his occupation of the four acres, part of the lot in question, it was proved to have been under no claim of right, but by permission of the proprietors. Of this lot then, when *Farrar* took his deeds of the heirs of *Ballard,* there was no adverse seizin.

On the fourth of *October*, 1819, no one being at that time in possession, claiming adversely, *Farrar* entered into and took possession of the lot in question, which had been previously conveyed to him by the true owners. Five days afterwards, *Stearns* caused his deeds of the same lot, from persons having no legal title thereto, to be registered. There followed no change of occupancy. He held the four acres before, as tenant at will to the proprietors and their assigns. A tenant or lessee may become a disseisor, at the election of the lessor. But the lessee will not be permitted to disclaim his tenure, and at his own election set up an independent title of his own, commencing by disseizin. He cannot make use of the possession, which he received at the hands of the lessor, as evidence of an adverse title. It does not appear that there was any change of circumstances, up to the tenth of *January*, 1820, when *Farrar* conveyed one moiety in common of the premises in dispute to *Dwelley*, the other plaintiff. Upon this view of the facts, there was no legal objection to the effective operation of the deeds, under which the plaintiffs claim. The possession being by construction of law in the true owner, the terms of the deeds, although they contained no covenants, and although the consideration may have been merely nominal, were sufficient to transfer and convey the land.

*Judgment on the verdict.*