## THOMAS GARDNER *versus* JAMES H. GOOCH.

In an action of trespass *quare clausum,* the Court cannot restrict the plaintiff in his proof to any less number of lots than he has described in his declaration.

Where the admission of testimony is not objected to at the trial, an objection comes too late, when made at the argument upon exceptions to the *instructions* of the presiding Judge.

Where a grantee is in possession of any part of the granted premises under a recorded deed, he is presumed to be in possession of the whole, unless other possessions or facts show the contrary.

But this presumption is overcome by proof of an adverse possession, though it has not been continued twenty years.

When a deed does not specify the number of acres intended to be conveyed, and the quantity of land depends upon the boundaries of the lot as located, and these boundaries do not depend on any given or proved quantity of land, it cannot affect the construction of the deed.

Exceptions cannot be sustained because the presiding Judge omitted to give a particular instruction, which was not requested.

The provisions of the statute, (R. S., c. 104, § 38,) relating to disseizin, apply to all land alike, though it is competent for the jury to look at the position of the land, the nature of its soil, and its productions, in connection with all the acts done upon it, in determining whether there has been in fact a possession and improvement, open, notorious, exclusive, and comporting with the usual management of a farm by the owner.

ON EXCEPTIONS to the ruling of TENNEY, C. J.

TRESPASS *quare clausum fregit.* The declaration alleged that the defendant broke and entered the plaintiff's close, "situated in East Machias, to wit, the several meadow lots, so called, which are numbered 85, 86 and 87, respectively," &c.

The defendant pleaded the general issue with a brief statement of "soil and freehold."

At the trial, the defendant moved that the plaintiff, before introducing his testimony, should select which of said meadow lots the trespass was committed upon; and that he be confined to testimony applicable to the lot so selected.

But the Court overruled the motion, and allowed the plaintiff to prove acts of trespass committed on all of said meadow lots, and the defendant excepted.

The plaintiff contended that the *locus in quo* was a portion of meadow lots Nos. 85, 86 and 87; and the defendant that it was included in lot No. 50, according to a plan by Waterhouse.

The plaintiff put in a deed of warranty from Samuel Ellis to himself, dated September 28, 1833, acknowledged and recorded December 5, 1833, of three fresh meadow lots, &c., numbered 85, 86 and 87, on the proprietor's plan and records of Machias, and known by name of Scott meadow; and introduced proof tending to show that for fifty years the meadow had been known as the Scott meadow, and as lots 83, 84, 85, 86 and 87, and that he had been in the exclusive, open and adverse possession of the *locus in quo*, as a part of those meadow lots, ever since the date of his deed aforesaid; he admitted that the *locus in quo* lay south of Waterhouse's north line of the township.

The defendant introduced a deed of warranty from Joseph Cutler and wife, to himself and others, of lot No. 50, on Waterhouse's plan, bounded north by Waterhouse's north line of the township, dated June 27, 1844, acknowledged same day, and recorded January 2, 1846. The description in this deed includes the *locus in quo*. He also offered evidence tending to show that he had notified the plaintiff that he claimed all the meadow south of the Waterhouse line, and that he had cut trees on the *locus in quo*, and had also cut the grass growing there.

The whole evidence was reported as a part of the exceptions, but it is not necessary to state it more fully, in order to show what questions of law were raised in the case.

Upon the evidence introduced, the jury were instructed that, if the plaintiff, upon receiving and recording the deed from Samuel Ellis to him, dated September 28, 1833, entered upon the land therein described, and continued to have a visible possession, occupancy, and improvement of only a portion thereof, such occupation and improvement, uncontrolled by other facts, were a disseizin of the true owner as to the

whole of the land described in the deed, though Ellis might not have had title thereto.

Or, if the plaintiff's possession of the premises in dispute was open, notorious, exclusive and adverse, comporting with the usual management of a farm by its owner, though a portion was woodland and uncultivated, and though not wholly surrounded by fences, or rendered inaccessible by other obstructions, it would constitute a disseizin of the true owner, unaffected by other facts.

But if he cut the grass upon a natural fresh meadow, and carried the hay away and converted it to his own use, annually for any period of time however long, without any other possession of the land, on which it grew, or any claim of title to the land, such acts alone would not constitute an adverse possession against the true owner of the soil.

If the defendant introduced no evidence of title or possession of his grantors, in the premises described in their deed to him of lot No. 50, dated June 27, 1844, and recorded January 2, 1846, it could not control and ride over the recorded deed of Ellis to the plaintiff, or affect the possession of the plaintiff of the premises in dispute, if his possession was such under the instructions aforesaid, as would constitute a disseizin of the true owner; that the delivery and registry of the deed to the defendant of lot No. 50, would not purge the disseizin of the plaintiff, (if the latter had acquired such a possession as constitutes a disseizin according to the foregoing instructions, or, if the disseizin was constituted by the delivery and recording of the deed of Ellis to him,) without an entry into some part of the disputed premises. But, if the defendant had the title to the premises in dispute, under the deed to him from Joseph Cutler and wife, or the right of entry therein, the disseizin might be purged by an entry. And, in regard to an entry, the intent with which it is made, generally determines its character, and consequently, the effect of the act. The mere act of going upon the land and cutting trees upon it, will not always constitute a legal entry sufficient to vest the seizin in him who has the

legal right. In order to constitute a legal entry, the party must go upon the premises with that intent.

The jury were also instructed, that a title in fee was not essential to the maintaining of an action of trespass by one having the actual possession against a stranger to the title, and not in possession; and, at the request of the plaintiff, that no person can purge a disseizin by an entry, who is not the true owner, or who does not make the entry by authority of the true owner.

The defendant requested the presiding Judge to instruct the jury,—

1. That, the defendant, being in possession of lot No. 50, second division, under a recorded warranty deed, *his possession* is *presumed by law* to be *co-extensive* with the *grant* described in his deed, unless they shall find by the evidence, that the plaintiff had the undisputed, open, notorious and exclusive adverse possession of some part of it for more than twenty years.

2. That, such possession in order to be *adverse* as against the true owner of the soil, must not only be open, notorious, and exclusive, but must have. been under an *asserted claim* to *own* some part of the *land* by permanent bounds as against the true owner; and, that the fact of having mown the grass annually on the natural fresh meadow, and carrying away the hay and converting it to his own use, could not constitute an *adverse* possession as against the true owner of the soil.

3. That, if the plaintiff having meadows of his own, adjoining lot No. 50, crossed over the line into that lot, and mowed the grass, and converted the hay to his own use *annually, without the knowledge of the owner, or of his agent or attorney*, such occupation, however long continued, would not constitute an *adverse* possession as against the true owner of the land.

4. That, if the plaintiff has his full complement of acres of meadow for the three meadow lots claimed by him north of the Waterhouse line, or northern boundary of the defendant's

lot, he cannot lawfully claim, and hold as part of those meadow lots, any portion of defendant's lot as described in his deed.

5. And also, to instruct the jury, as to what *constitutes* an adverse possession as against the true owner of the defendant's lot.

The first clause of the second requested instruction was given; the remainder of that, and the others were not given any further than they are contained in the instructions already given.

The verdict being against the defendant he excepted to the instructions, and to the refusal to instruct.

The case was argued in writing by

*J. A. Lowell*, for defendant, and

*G. F. Talbot*, for plaintiff.

The opinion of the Court was drawn up by

MAY, J. — TRESPASS *quare clausum*, and, at the trial, before the introduction of any evidence relating to the acts of trespass, the defendant moved that the plaintiff be required to select some one of the three several lots described in his declaration, to which his proof of such acts should apply. This motion was very properly overruled. The Court could not legally have restricted the claim of the plaintiff to any particular lot. He had a right to prove his damages occasioned by the defendant, upon each and all the lots, as his writ alleged.

No objection appears to have been made by either party, at the trial, to any of the evidence offered and admitted. The argument of the counsel in defence, therefore, that some part of such evidence was inadmissible, because there was other and better evidence to be found upon the records of the original proprietors, as to the location and extent of the plaintiff's lots, comes too late. The only questions now open to him are those which are raised upon the face of the exceptions.

There was evidence tending to show that the plaintiff had

Gardner *v.* Gooch.

acquired title, either by deed or disseizin, to some part of the premises embraced within the deed, under which the defendant claims; and that the alleged acts of trespass were committed upon this part. Which party had the better title to it, in view of all the evidence in the case, was a question for the jury. The presiding Judge was requested by the counsel in defence to instruct the jury in regard to several matters of law. The first request was " that the defendant, being in possession of lot No. 50, 2d division, under a recorded warranty deed, his possession is presumed by law to be coëxtensive with the grant described in his deed, unless they shall find by the evidence, that the plaintiff had the undisputed, open, notorious and exclusive adverse possession of some part of it for more than twenty years." Such a possession, so continued, is equivalent to a title by grant. The legal proposition, therefore, which is contained in the request, is, that a grantee in possession of some part of the granted premises, under a recorded deed, is to be regarded as in possession of the whole, notwithstanding he is actually disseized of some portion of the premises by a third person in actual possession, unless the disseizor has continued his adverse possession long enough to acquire the title. The mere statement of such a proposition shows its absurdity. The rule of law is, that where a grantee is in possession of any part of the granted premises, under a recorded deed, he shall be deemed to be in possession of the whole, unless other possessions or facts show the contrary. *Little* v. *Megquier*, 2 Maine, 176. The presumption that one's possession, under his recorded deed, is commensurate with his grant, is always overborne and repelled by an adverse possession, so long as it exists. The very idea of a disseizin, whatever its duration, is an exclusion of the owner from possession just so far as it extends.

That part of the second requested instruction, which was not given in the precise words of the request, appears to have been so far given in the general instructions as to leave no ground of complaint. And so, in regard to the third request, the general instructions given upon the point to which

it refers, are more favorable to the defendant than the instruction sought. They plainly imply that the acts mentioned in the request, are alone insufficient, under any circumstances, to constitute an adverse possession, as against the true owner; and this, whether he had knowledge of such acts or not. They clearly indicated to the jury that something more than all the acts contained in the request, was necessary to constitute such a possession. The fourth requested instruction was rightly withheld. There was nothing in the plaintiff's deed from Ellis to specify the number of acres intended to be conveyed. The quantity of land depended upon the boundaries of the plaintiff's lots as they were located; and these boundaries did not in any degree depend upon any given or proved quantity of land. The fifth request simply calls upon the Court to define "what constitutes an adverse possession as against the owner of the defendant's lot," and was sufficiently complied with.

In regard to the general instructions, so far as they relate to the law of disseizin, it is now urged in argument, that they were erroneous, because the same rule is applied to meadow lands disconnected from any farm, as would be applied to a farm concerning which a disseizin is alleged. It is contended, that the statute which defines what shall constitute a possession and improvement of land, R. S. of 1841, c. 145, § 42, and of 1857, c. 104, § 38, is applicable only to farms. No such instruction was requested. That it was competent for the jury to look at the position of the land, the nature of the soil and its productions in connection with all the acts done upon it, in determining whether there was in fact a possession and improvement open, notorious, exclusive and comporting with the usual management and improvement of a farm by its owner, is not to be denied; and we doubt not that all these circumstances were urged upon the jury by the learned counsel in defence. The statute, however, applies to all land alike. There was, therefore, no error on the part of the Court in stating its provisions to the jury as law.

It is further said, that although the general instructions

given may be sound law, when taken in the abstract, they become erroneous and delusive, when taken in connection with the facts existing in the case. It is the duty of the Court to give the law as it is, and of the jury, aided by the arguments of counsel, to apply the facts, as they shall find them, to the law. If the facts in this case required the application of any rule of law which had not been given, it was the business of the counsel to ask for the appropriate instruction, and, if refused, exceptions might be sustained.

The instructions which were given are in harmony with the law, and were appropriate to the facts as reported in the exceptions. In view of the authorities cited by the plaintiff, and many more that might be, as well as of those cited in defence, we perceive no error in regard to any instruction given or withheld. The result is, that *the exceptions must be overruled.*                *Judgment on the verdict.*

TENNEY, C. J., RICE, APPLETON, CUTTING and KENT JJ., concurred.