GRIFFIN *v.* LEE.

1. Two adjoining lots of land being included in the same bond for titles and afterwards in the same deed of conveyance executed in pursuance of such bond, but not described as two adjoining lots or as one plantation, settlement or tract, actual possession of one prior to the recording of the deed is not such possession of the other as will serve to establish a title by prescription as to the latter, although the possession be long enough continued to per-

fect a title as to the former.    *Tritt* v. *Roberts*, 64 *Ga.* 156;  *Barber*
v. *Shaffer*, 76 *Ga.* 285.

2. Under the facts of this case, the plaintiff below was not estopped ;
nor was she accountable in equity out of the lot which she re-
covered, either for improvements or for any part of the proceeds
of the sale made by her nominal trustee which he had applied to
her use, such proceeds not amounting to more than the value of
the other lot which the defendant in the action succeeded, by
prescription, in holding against her.  It would not be equitable
for the defendant to thus defeat her claim as to one of the lots,
and at the same time take credit for a part of the proceeds of sale
arising from both lots, less in amount than the value of the one
which defendant retains and continues to enjoy.

3. Inasmuch as by the conveyance executed in 1874 to effectuate an
executor's sale made in December, 1866, the title vested directly
in the plaintiff, though the conveyance was to another as trustee
for her, she being then a married woman, the trust was executed
*eo instanti*, and when the order of sale was obtained from the
chancellor in 1873, there was no title in the trustee, and the sale
subsequently made by him under that order was not one to which
the act of 1876 (Code, §2925b) applies.  Consequently, the bar of
three years prescribed by that act is not available as against the
assertion of the plaintiff's title in this action.

4. Whether certain witnesses were competent or incompetent, their
testimony was immaterial to the result of the case upon its sub-
stantial merits, in view of the finding made by the jury.  There
was no error in refusing a new trial.            *Judgment affirmed.*
August 23, 1892.

Title by prescription.    Estoppel.    Equity.  Trust.
Married woman.    Witness.    Before Judge ATKINSON.
Dodge superior court.    August term, 1891.

This was an action by Mrs. Lee against Mrs. Griffin,
commenced February 1, 1886, to recover lots of land
23 and 38 in the 15th district of Dodge county, with
mesne profits.    The lots adjoin and lie broadside of
each other.    The jury found for the plaintiff lot 38, and
for the defendant lot 23.    The defendant's motion
for a new trial was overruled.    Her pleas were, in brief,
the general issue ; a prescriptive title of seven years;
that she and those under whom she claimed had been
in possession under claim of right since January 9,
1875, and had erected substantial and permanent im-

v 90-15

provements, in value between $9,000 and $10,000, and had regularly paid the taxes; that during all this time the plaintiff knew of this possession and of the improvements being erected, and not only did not question defendant's title but failed to give any warning or make any claim until the present action was commenced, and should not be allowed to recover, but if so allowed, defendant should be reimbursed the amount expended for the improvements, etc. The defendant further pleaded the act of 1876, providing that suits to recover trust property sold without proper authority shall be brought within three years from the 29th of February, 1876; that L. L. Harrell was plaintiff's trustee appointed by the will of Levi Harrell, the father of plaintiff, and had been faithful and diligent, and was perfectly responsible and reliable and worth $10,000 in property; that he safely invested the proceeds of the sale of the land in dispute, and is ready at any time to come to a settlement with plaintiff; that the proceeds of the sale by him were invested in improvements on the place where plaintiff resides, and in tuition, clothing and provisions for her children and herself; and that the order of court under which he sold was obtained by him at her special request, there being no other property to sell, and the sale being necessary to support the family.

At the trial the plaintiff introduced the will of Levi Harrell, dated June 10, 1856, and recorded December 21, 1865, in which it was directed that his lands be sold and the proceeds divided between his children, the daughters' portions to belong to them free from the liabilities or contracts of any of their husbands, during their lives, and after their deaths to go to their children. By this will L. L. Harrell, testator's son, was appointed trustee for the property of the testator's daughters, the plaintiff being one, with direction that he control their property so far as to protect it from the

debts, contracts or disposition of their husbands. L. L. Harrell was also appointed executor of the will, and qualified as such. On April 17, 1874, as executor he made two deeds (one to each of the lots 23 and 38) to himself as trustee for the plaintiff, in pursuance of public sale under the will on the first Tuesday in December, 1866. These deeds were recorded May 22, 1874. On September 12, 1883, the judge of the superior court passed an order at chambers, granting leave to L. L. Harrell, trustee for the plaintiff, to sell the two lots in question, upon his petition representing that it would be for the benefit of the *cestui que trust* to sell the property and reinvest the proceeds in other property, and that he could make an advantageous sale which would be for her benefit. The plaintiff does not appear to have been represented when this order was granted. On April 17, 1874, two deeds were made by L. L. Harrell, as trustee for the plaintiff, to A. C. Page, conveying the lots for $800 each, which deeds were recorded May 23, 1874. On June 16, 1879, a deed was made by Mrs. Page as sole heir of A. C. Page, conveying to J. W. Griffin, the husband of the defendant, the two lots, containing 405 acres more or less. This deed was recorded March 24, 1880. It was admitted that Mrs. Page was such sole heir, and that defendant was in possession of both lots as the widow of Griffin. Also in evidence was a copy of the letters of administration which issued to the defendant and one Wooten as administrators of Griffin. The plaintiff testified that she did not consent to the sale of the land, did not authorize L. L. Harrell to sell it, and did not know anything about the order to sell, nor the proceeding to obtain it, nor the sale itself.

Upon this evidence plaintiff closed, and the defendant moved for a nonsuit on the grounds, that the evidence introduced by the plaintiff showed title out of her

and in the defendant, and further showed that plaintiff did not have the legal title, but the same was in her trustee if it had not passed from him to defendant, and the suit should have been brought in his name, and that the plaintiff's right of action, if she had any, was barred by the act of 1876. The overruling of this motion is one of the grounds for new trial.

The defendant introduced a bond for title from A. C. Page to J. W. Griffin, dated January 1, 1875, and recorded May 8, 1876, and proved the execution of the same by the subscribing witnesses, and its custody in J. W. Griffin. The condition recited is, that the obligor shall convey the two lots 23 and 38, " including benefit of agreement with Russell and Grimsley regarding removal of trees from lot 23 in two years, and from 38 in three years." Also a rent contract between J. W. Griffin and R. R. Evans, dated January 9, 1875, for a house and certain land under fence on lot 23, reciting that Griffin had rented the same to Evans, etc. Also, testimony of defendant and of L. L. Harrell and W. W. Harrell, in brief, as follows: The order to sell was obtained at the special instance and request of plaintiff, who told Harrell that her husband was drunk all the time, was selling the timber from the land and not supporting her or her family, and that she wanted to get away from Eastman where whiskey was sold. Harrell invested the money for which he sold the land to Page in another place of 400 acres, for which he paid $7 an acre, and on which he has a tenant now. He is ready and has been all along to have a settlement. He supported the family at the time of the sale in 1874, furnishing them provisions, horses and buggy, paying school bills, doctors' bills, etc. He did this before and after the sale, and used part of the money arising from the sale in supporting the family and paying these bills. The two lots were wild, unimproved, and he got a good

price for them. He had no money belonging to plaintiff at the time of the sale, and she needed it for a support. He furnished clothing for the children and various other things, repaired the house where she lived, etc. The improvements put on the place where she lived, and what he paid out for her support and family, and the money he spent on the place on the river, came from the money he got from these lands. He sold them in good faith, and is responsible for the money. He would not sell without the plaintiff's consent; saw her at her house and obtained her consent. He is worth $8,000 or $10,000. Plaintiff is not worth anything, except the property he holds for her. She was twenty-one years old in 1865. She did not object to the sale at any time before bringing this suit. He was not inclined to sell it, but she wanted it sold, her object being to get her husband away from town and from whiskey. If her husband had been sober and had attended to his business, it would not have been sold. At the time of the sale parties were trespassing on it. Russell first went to plaintiff to buy, and she sent him to Harrell who then went to see plaintiff, and she requested him to sell. He had an order to sell her home lot, but she afterwards objected to selling it and he did not sell. Her son Levi did not come to him with a message from her not to sell lots 23 and 38. No objection whatever was made to his selling them until this suit. She seemed to be satisfied with the sale afterwards. The land is now worth from $20 to $25 an acre. The possession of defendant and her husband has been continuous and uninterrupted since 1878. He commenced improving the place in 1875, 1876 and 1877. The first building on lot 23 was erected in the spring of 1877. They moved there on April 30, 1878. Griffin then had a dwelling-house and barn on the place, and eight or ten acres cleared around the house on lot 23.

After moving there he made the improvements as set forth in the pleas. " The woods pasture was on lot 38 made some time after we moved on lot 23 in 1878 or 1879, enclosing nearly all the lot." The plaintiff never made any objection to the improvements or the possession of the Griffins, although she knew of both. She had been seen to pass by the place after the Griffins moved there, and she lived about two miles away. Griffin went into possession under the bond for title, and held possession thereunder until he got the deed from Mrs. Page.

In rebuttal there was testimony by the plaintiff and by her sons and her husband to the following effect: L. L. Harrell did not go to see her to get her consent to sell the land in question, but proposed to swap the place where she lives for the place on the river, which she refused to do. Russell did not come to see her to buy the place, and she did not send him to L. L. Harrell. Page came to her and wanted her to sign deeds to the land, offering her $25 or $50 to do so, which she refused. This was after Russell had bought the land. He never came there before to buy the land. He came there two or three times. She never heard of the place on the river being bought for her by L. L. Harrell, until this year. For three or four years he furnished her in the fall with two or three or four hundred pounds of bacon, some before the land was sold and some afterwards. He also furnished her with a second hand buggy some time ago. Of late years he has furnished her nothing. About 1874 R. R. Evans got leave from " us" to live in the little log house on lot 23. Plaintiff did not consent for Evans to give up to Griffin. The house was built before the sale to Page. She does not remember any conversation in which she told Harrell she was satisfied with the sale of this land or that she consented. She knew of the improvements being made. Did not

know where the money came from with which Harrell
bought provisions for her.   Knew all the time since the
land was sold that it brought $1,600.   Russell kept
coming to her for about a week to buy, and she would
not sell.   During the years Harrell furnished her with
provisions he collected rents from another place.   He
has made no settlement with her.   Russell also tried to
buy the timber from her, but she refused to sell it.   J. W.
Griffin and W. L. Lee, a son of plaintiff, were running
the land line between lots 23 and 8, and Griffin said he
was going to buy 23, whereupon Lee told him if he did
he would buy a lawsuit.   He said he would risk it if he
could get a deed from L. L. Harrell, who he said had
the right to sell it.   Lee told him if he would examine
the will he would find it would not be all right.   He said
if he could not hold under deed from L. L. Harrell, he
would enclose it and hold it.   When Russell came and
said he had bought, plaintiff sent W. L. Lee to tell L. L.
Harrell she was not satisfied and not to sell it, and Lee
so told him.   Griffin took possession of lot 23 in 1875.
He did not take in lot 38 until 1880.   The property is
worth about $4,000 ; etc.

The grounds of the motion for a new trial besides the
one already stated, and those alleging that the verdict
is contrary to law and evidence, assign error upon the
overruling of defendant's objections to the testimony of·
the plaintiff and of her sons and her husband, on the
grounds that the other parties to the transactions about
which they testified, to wit, Russell, Page and Griffin,
were dead, and that the defendant was claiming under
them.   Another ground assigns error in that the court
charged the jury that if they should find that Griffin
took possession of lot 23, such possession did not ex-
tend to the adjoining and contiguous lot 38, but the
prescription upon the latter could commence only from
the date of actual entry thereon ; and in that the court

failed to charge that Griffin's possession extended to the boundaries of both lots as described in his bond for title and deed made in pursuance thereof. The other grounds of the motion are, in brief, that the verdict is contrary to the charge of the court on the subject of estoppel of the plaintiff, and of defendant's prescriptive title, and of improvements and *mesne* profits.

DeLacy & Bishop, for plaintiff in error.

E. A. Smith and Martin & Smith, *contra.*