ROBERSON *v.* THE DOWNING COMPANY, and *vice versa.*

120 833
123 427
120 833
s126 175
j126 377
120 833
129 674

1. Where a deed was properly attested by A. B. and "F. H. H.," notary public, but registered as having been executed in the presence of A. B. and "T. H. H.," notary public, such clerical error did not destroy the character of the deed as constructive notice.
2. Where one enters into possession of a part of a tract of land under color of title which is duly recorded, and thereafter conveys the land to subsequent grantees, who thereupon enter, but who fail to record their deed, such subsequent grantees may tack their possession to that under the duly recorded deed, and acquire a good prescriptive title at the expiration of seven years from the entry under the registered instrument.
3. The decisions are conflicting as to whether record was necessary in order to make possession of a part extend to the limits of a lot or known tract described in the deed.
4. The older and controlling cases of *Morrison* v. *Hays,* 19 *Ga.* 296, *Griffin* v. *Sketoe,* 30 *Ga.* 300, and *Wiley* v. *Warmock,* 30 *Ga.* 701, are, however, to the effect that record was not necessary.
5. Whether the Civil Code, § 3587, adopted one of the conflicting lines of authority and made the same statute law, is not involved in the present case,

inasmuch as the deeds relied on were not made since the adoption of the Code of 1895.

Argued February 17, — Reargued June 24, — Decided August 12, 1904.

Equitable petition.   Before Judge Parker.   Wayne superior court.   August 11, 1903.

The Downing Company filed an equitable petition against Roberson, to quiet the title to lot 88 in the second district of Wayne county, and to enjoin acts of trespass.   The defendants claimed under paper title, having entered thereunder on a part of the land, shortly before the suit was filed.   The plaintiff also claimed under a paper title, one link of which was a deed from Lewis, deputy sheriff, under a sale by virtue of a tax fi. fa. for $3.70 against W. B. Parker, to Mumford, recorded in 1863.   Mumford did not enter, and it was claimed that the deed was void, because, at the time it was made, a sheriff had no right to make a sale under such a tax fi. fa.   Mumford conveyed the land to Burbage in 1880, but the deed was not recorded until 1902.   Subsequent conveyances of the same land were as follows:   Burbage to Armitage, March 11, 1881, recorded March 14, 1881; Armitage to McDonough, February 21, 1882, recorded February 28, 1882 ; McDonough to Burbage, January 25, 1887, recorded in 1902.   Burbage executed a mortgage on the land to the Downing Company, with power of sale, May 29, 1893, recorded May 30, 1893.   There was a sale under this power, November 6, 1895, to the Downing Company; and the deed made in pursuance of the sale was recorded November 8, 1895.   A confirmation and quitclaim to the company was executed by Burbage, April 14, 1902, and recorded April 16, 1902.   The suit was filed April 19, 1902.   The defendants contended that the evidence of possession was not sufficient to make the title ripen to the whole lot ; that the deed from Burbage to Armitage was not duly recorded, the deed having been executed in the presence of F. H. Harris, notary public, and registered as executed in the presence of " T. H. Harris," notary public, and there being no such officer as T. H. Harris, notary public, in Glynn county, where the deed purported to have been executed. W. E. Kay, Esq., testified, that he was present and saw the deed executed, and that it was attested by F. H. Harris, notary public of Glynn county.   There was evidence as to boxing the timber, running a turpentine still, sawmills, and the like, on the land in

question, from 1881 down to the date of the alleged trespass; also that Mrs. Lary, the wife of one of Burbage's partners who at one time had an interest as such in the land, had been in possession of a part of it for seventeen years under the same chain of title; that she had been living on the property for sixteen years, — ever since 1887. The verdict having been for the defendant, the plaintiff moved for a new trial on the general grounds, and because the court admitted in evidence a certified copy of the decree in the case of Parker v. Green, without requiring a copy of the entire record in that cause; because the court admitted in evidence a certified copy of the will of W. W. Parker, with a certificate of the ordinary that McIntosh had qualified as executor, without requiring the production of the letters testamentary; and because the court charged the jury that possession under a duly recorded deed will be construed to extend to all the contiguous property embraced therein, the error in the charge being that this principle applies only where there is a conveyance of two or more contiguous lots, and not to a case like this, where there was only one lot, and where, if the evidence did not establish possession of the whole under color of title for seven years, there was uncontradicted evidence of possession of a part for that period. It was contended that the court should have charged that possession of a part for seven years under color of title gives prescription to the entire lot, whether the deed has been recorded or not.

The court granted a new trial, for the reason that he considered the verdict to be contrary to the following charge: "It would not be necessary that the plaintiff or any of its predecessors in title should continuously and for a period of seven years hold possession of the premises in order to give them such prescriptive title; but it would be sufficient if you should find from the evidence that any of the predecessors in title of the plaintiff had possession of the premises for a part of such period of seven years, and then transferred his title to either the plaintiff or [one] of its predecessors in title, who immediately went into possession of such premises and held the same until such period was completed. In other words the possession of each of the predecessors in title of the plaintiff would be tacked on to the possession of the others, until possession for seven years would be held and the prescription thus ripened, provided such possession was uninterrupted and

continuous and under the same claim of title; and if you should find from the evidence that such prescription had ripened either in the plaintiff or any of its predecessors in title, then such prescriptive title would be perfect title, and paramount to the perfect paper title, if you should find such to exist." The defendant filed a bill of exceptions complaining of the grant of a new trial. The plaintiff filed a cross-bill of exceptions, on the ground that the court should have granted a new trial upon each and every ground in the motion, and should not have restricted the grant to the specific ground set out in the order.

*John W. Bennett, Leon A. Wilson,* and *W. M. Toomer,* for Roberson et al. *W. E. Kay* and *C. P. Goodyear,* contra.

LAMAR, J. (After stating the foregoing facts.) 1. The deed from Burbage to Armitage, dated March 11, 1881, was witnessed by John H. McCollough and F. H. Harris, notary public. It was recorded March 14, 1881, but the clerk erroneously entered the name of the notary public as T. H. Harris. The defendants therefore insist that the possession thereunder by Armitage, and thereafter by McDonough and Mrs. Lary, was not possession under a duly-recorded deed, and hence there could be no constructive possession of the entire tract described in the color. Civil Code, § 3786. But bad writing by the notary, incorrect reading by the clerk, or his errors in transcribing the original, will not destroy the registration as constructive notice, if the errors are immaterial, or of a character which will not mislead one entitled to notice, when he examines the record actually made. If the property be misdescribed, or if the names of the parties to the instrument be so entered as to deceive an innocent purchaser, or fail to give substantial notice to one entitled thereto, a different question might be presented. In many cases there are, no doubt, slight inaccuracies in transcribing the paper upon the deed book. It will be rare where in spelling, punctuation, or the like there is not some slight variation from the original. An error in a formal part of the instrument would not concern those not interested therein, nor have the effect of nullifying the notice given by the substantial correctness of the registration of the material parts of the paper. To one examining the books in the clerk's office, this deed would appear on its face

to have been duly recorded.   The defendant's evidence showed
that it was actually executed in the presence of an officer and
was entitled to record.   The mistake in substituting the initial
" T " for " F " was not of a character to throw an examiner off
his guard.   The names of the grantor and grantee, the description
of the property, and the fact that the land had been sold in fee,
were clearly and correctly indicated, and were sufficient to put
the true owner on notice that such an instrument had been ex-
ecuted in the presence of an officer authorized to attest deeds,
and that the occupant under such instrument claimed or might
be claiming constructive possession of all the property therein
described.   Woodson v. Allen, 54 Tex. 551.   In *Shepherd* v.
*Burkhalter*, 13 *Ga.* 443 (5), the entire signature of the mortgagor
was omitted from the record, and in *Williams* v. *Adams*, 43 *Ga.*
410, the signature of the attesting officer was entirely omitted on
the deed book.   These omissions were substantial.   On the face
of the record such papers were either incomplete or not entitled
to record, and therefore gave no notice.   But in *Hadden* v. *Lar-*
*ned*, 87 *Ga.* 639, where the paper had been executed out of the
State in the presence of a commissioner, and the clerk failed to
transcribe the seal of such commissioner, it was held that while
the record should have indicated that a seal had been used, its
failure so to do did not vitiate the registration.   " To pronounce
the recording fatally defective for so slight a blemish would be
over technical."   See *Way* v. *Lowery*, 72 *Ga.* 65, and *Johnson* v.
*Duncan*, 90 *Ga.* 1, where there was a mistake in the number of
the lot.   See also *Smith* v. *Meador*, 74 *Ga.* 416, where the officer
was only such de facto; *Banks* v. *Lee*, 73 *Ga.* 26; *Burke* v. *An-*
*derson*, 45 *Ga.* 35; St. Croix Co. *v.* Ritchie, 73 Wis. 409; Lewis
*v.* Hinman, 13 Atl. Rep. 143; dissenting opinion in Jennings *v.*
Wood, 20 Ohio, 279 (Lemuel for Samuel); Royster *v.* Lane, 24
S. E. Rep. 796 (mistake of the name in the granting clause).

2. If, then, this deed from Burbage to Armitage was duly re-
corded, and there was continuous and adverse possession of any
part of the land thereunder for seven years, plaintiff would have
been entitled to a verdict, even under *Knight* v. *Isom*, 113 *Ga.*
617; and the judge rightly granted a new trial; unless the defend-
ant's contention be correct, that, under the Civil Code, § 3587,
there could be no tacking when the subsequent conveyances were

not immediately and duly recorded and followed by continuous possession thereunder by the subsequent grantee. Such seems to be the ruling in Texas, but the decisions are based upon the statutes of that State, which fix one period for prescription without color, another for prescription under color, and a still shorter period under recorded color. The Civil Code, § 3587, is not to be construed as modifying, but as in pari materia with § 3598, that "An incohate prescriptive title may be transferred by a possessor to a successor, so that the successive possessions may be tacked to make out the prescription." If A enters under color duly recorded, and dies, the possession of his heirs is but a continuation of A's possession. Or if A should lease such property, his possession would be continued by the tenant although the lease may not have been recorded. If, on the other hand, he sells, the purchaser is in privity with him, and the effect of the entry under the sale is to maintain and continue such original possession, or at least to afford a foundation on which the new possession can be tacked. A similar question was decided in Dolton *v.* Cain, 14 Wall. 472, under the Illinois statute, that one "having a connected title in law or equity deducible of record from the State or the United States can plead the possession in bar of the suit." It was there held not to be necessary that the entire title of the defendant be evidenced by actual record. If the source of the title is of record, it is available to every person claiming a right under it who can connect himself with it.

3–5. The court therefore properly granted a new trial. The case might here be left but for the fact that the defendants in error, who were plaintiffs in the court below, filed a cross-bill of exceptions, and assigned error on that part of the charge in which the court instructed the jury that "possession under a duly recorded deed will be construed to extend to all the contiguous property embraced therein; that is, if a person is in actual possession of a part of a lot of land under a duly recorded deed conveying the whole of the lot of land to him, or more of the lot than he is in actual possession of, has enclosures upon such part of lot, under fence, houses built upon it, or other evidence of actual possession as I have charged you, and has his deed duly recorded under this section of the code, he will be construed to have in his possession all of the land embraced within the boundaries set out in his

deed." In the argument on this and similar assignments, the defendant in error asked and obtained permission to review *Knight* v. *Isom*, 113 *Ga.* 617, a decision by six Justices, and *Baxley* v. *Baxley*, 117 *Ga.* 60, by five Justices. The briefs and discussion were directed solely to this motion.

All of the courts in this country recognize the same rule on the subject of constructive possession as that laid down in the Civil Code, § 3586, but there is much difference as to the incidents and circumstances under which it will be applied. As said in Woods v. Montevallo Co., 84 Ala. 560, " How far color of title to the land, accompanied by actual occupancy of a part, will extend the occupant's possession constructively to the whole tract included in the deed, is not definitely settled, and, we may add, is a subject full of difficulty." Possession of a comparatively small part has been decided not to be constructive possession of a tract consisting of 4,000 acres, 20,000 acres, or 48,000 acres. Jackson v. Woodruff, 1 Cowen, 276; Thompson v. Burhans, 61 N. Y. 52; Chandler v. Spear, 22 Vt. 405; Polk v. Beaumont, 64 S. W. Rep. 58. In Archibald v. Railroad Co. (1896), 1 App. Div. Sup. Ct. N. Y. 255, it appeared that the New York Central Railroad Company had a grant to a strip of land extending 140 miles from New York City to Albany, and adjoining its track. It built a station on the strip at Yonkers, and contended that possession of a part under color gave it constructive possession of the balance; but of course the court refused to sustain this contention. Some courts hold that there can be no such thing as constructive adverse possession; others that constructive possession can not defeat the constructive possession of the absent owner; others that it is effective only when the tract consists of a known farm with well-defined boundaries; others that the unoccupied portion must be subservient to and capable of a use and be actually used in connection with that held possessio pedis; as by the grazing of stock, cutting of firewood or hay, or some act to indicate the assertion of title, even though by themselves such acts were insufficient to establish independent adverse possession; others hold that it does not apply where the occupation is of a small part of a large tract. Turner v. Stephenson (Mich.), 2 L. R. A. 277; Foulke v. Bond, 41 N. J. L. 550; Thompson v. Burhans, 61 N. Y. 52; Jackson v. Woodruff, 1 Cowen, 276; Northport v. Hendrickson, 139 N. Y. 440; Murphy

*v.* Doyle, 37 Minn. 113; Chandler *v.* Spear, 22 Vt. 405.    And this court has likewise recognized that possession of a part does not necessarily extend to the limits described in the color; as, for example, where the enclosure was of a small part of a field which took in a portion of three tracts cornering therein.    *Denham* v. *Holeman,* 26 *Ga.* 183, 191.    And in *Carrol* v. *Gillion,* 33 *Ga.* 547, the owner of property bought adjoining land at a tax sale, cut timber and rails therefrom, extended the enclosure over the land, and took in a strip across the whole length of the property bought at tax sale, and continued to cultivate and occupy this strip for more than seven years; yet it was held that such possession did not give him title to the limits in the color. Not only have modifications and limitations like these been indicated, but some courts have gone further, and, for the reasons stated in *Anderson* v. *Dodd,* 65 *Ga.* 404 (bot.), held that not only must there be possession of a part and color, but that the color should be recorded, in order for the prescription to ripen over that part of the land held only in constructive possession.

"While a person entering upon lands adversely, without any deed or color of title, is thus restricted to the land actually occupied by him, and takes nothing beyond the limits of his actual occupancy, and is required to occupy the land for the purposes of improvement or cultivation, yet where a person goes into possession under color of title, *duly recorded,* in which the boundaries of the lot are defined, this operates as constructive notice to all the world, of his claim, and also of its extent, so that not only does a sufficient occupancy of a part in the lot carry with it, by construction, the possession of the entire premises described by his conveyance, where the boundaries are well defined, but also dispenses with the rule as to pedis possessio, and only requires from him such an occupancy as the nature and character of the premises admits of."    Wood on Limitations (3d ed.), § 259.    In Prescott *v.* Nevers, 4 Mason, 330, a suit for cutting timber off of lot number 1, where one of the parties claimed title by virtue of possession of a part, and constructive possession of the balance of the lot, Judge Story said : " I take the principle of law to be clear, that where a person enters into land under a claim of title thereto by a *recorded deed,* his entry and possession are referred to such title; and that he is deemed

to have a seisin of the land coextensive with the boundaries stated in his deed, where there is no open adverse possession of any part of the land so described, in any other person." In Gardner v. Gooch, 48 Me. 487, it was held that where a grantee is in possession of part, under a *recorded deed,* he is presumed to be in possession of the whole. "The law of constructive possession declares that the deed of the lot to the settler which may be *found on record* . . shall, so far as his title is concerned, be a substitute for a substantial and permanent fence around the whole." Chandler v. Spear, 22 Vt. 405. "If a man enters upon a tract of land under a deed duly registered, . . and has a visible occupation of part of it only, the true owner is disseised of the whole tract." Farrar v. Eastman, 10 Me. 195. See also Pomeroy v. Stevens, 11 Met. 244; Nye v. Alfter, 127 Mo. 530; Shedd v. Powers, 28 Vt. 655; Alexander v. Polk, 39 Miss. 738; Forrest v. Jackson, 56 N. H. 357. To the same effect is *Weitman* v. *Thiot,* 64 *Ga.* 17. There separate tracts had finally become a single plantation. Error was assigned upon an instruction to the jury that if a party is in possession of a part of a *tract of land* he is in possession to the boundaries of the tract. As to which Judge Jackson said: "The charge in respect to the extent of possession by construction, when the party· actually possesses part, is right, as we understand it. The law is that it extends as far as the *boundary of the tract* described in the deed *if recorded,* or if the boundaries are known to the contesting party." In *Johnson* v. *Simerly,* 90 *Ga.* 212, there had been five lots, but they really constituted one tract. The court cited *Parker* v. *Jones,* 57 *Ga.* 204, to the effect that the word "tract" means all the land embraced in the deed, no matter of how many different parcels it was originally composed, and approved a charge that the possession of a part would be constructive possession of the entire tract, if the deed was properly recorded. Possession under *such a deed* of a part of the land thus conveyed would embrace the whole tract thus described in the deed.

On the other hand, there are cases to the effect that record of the color is not necessary. In 1 Am. & Eng. Enc. L. (2d ed.) 860, will be found a reference to a case in the Supreme Court of the United States, construing a Tennessee statute, and cases from California, Illinois, Mississippi, New Hampshire and North Caro-

lina, holding that registration of the color is not essential. The ruling in *Carstarphen* v. *Holt*, 96 *Ga.* 703, is to the same effect, for it is there said that the rule requiring registration was to be limited to those cases where there were independent and distinct lots. See *Janes* v. *Patterson*, 62 *Ga.* 527 ; *Tritt* v. *Roberts*, 64 *Ga.* 156 ; *Griffin* v. *Lee*, 90 *Ga.* 224; *Anderson* v. *Dodd*, 65 *Ga.* 402. It may be argued, however, that while there is a presumption that the code states the law as it was, yet where there was a conflict in the decisions, one of its most useful offices was to settle the conflict and remove the doubt ; that the use of the words " contiguous property," instead of " contiguous lots," in effect made statute law the principle involved in *Weitman* v. *Thiot*, 64 *Ga.* 11, and in *Johnson* v. *Simerly*, 90 *Ga.* 612, which in turn were based on the principle announced in the much older case of *Nevers* v. Prescott, 4 Mason, 330 ; and that *Knight* v. *Isom*, 113 *Ga.* 617, and *Baxley* v. *Baxley*, 117 *Ga.* 60, were really based on the Civil Code, § 3587, without having attention called to the fact that the deeds under consideration were older than the code. Whatever § 3587 may mean,— whether it refers to single tracts or plantations like those described in the *Weitman* and *Johnson* cases, or to contiguous lots, mentioned in *Carstarphen* v. *Holt*,— can make no difference in the present case. Nor can we, under the record here, undertake to review cases which construe § 3587, when the plaintiff's case involves the construction of deeds executed long before the code, and where some were recorded and some not recorded. The case is to be controlled, not by § 3587, and not by cases which were construing that section, but by the law as it existed between 1881 and 1896. *Pollard* v. *Tait*, 38 *Ga.* 439 (4). We have already shown that there was a conflict at that time. How that conflict is to be resolved depends upon rules of construction usual in such cases. On an examination of the authorities we find that older cases, not cited in any of the opinions above referred to, and not called to the attention of the court in this case, hold in effect that possession of a part of a known tract gives constructive possession of all the lands in such known tract which are described in the color. *Wiley* v. *Warmock*, 30 *Ga.* 701 ; *Morrison* v. *Hays*, 19 *Ga.* 296 ; *Griffin* v. *Sketoe*, 30 *Ga.* 300. These older authorities control.

The assignment in the cross-bill does not raise any distinction

between the law before and after the code, nor suggest that the charge, if right under the code, was inapplicable to the facts. All of the other assignments of error were abandoned.　While, as stated above, the charge of the court in following *Knight* v. *Isom* was inapplicable to the facts of the case, we are not called upon to decide whether it was or was not a correct statement of the law since the adoption of the code.　And for that reason the judgment is

　*Affirmed on both bills of exceptions.　All the Justices concur.*