## ROBERSON et al. v. DOWNING COMPANY.

Where there was undisputed evidence of actual possession by the location and operation of a sawmill upon a part of a tract of land held under color of title for a part of the statutory prescriptive period, followed by a sale of the land and a removal of the mill, then an interval of nine months, and a resumption by the purchaser of actual possession by residence of tenants and the cultivation of fields thereon, continued for a term sufficient to complete the statutory period,. in the absence of affirmative proof of other acts indicating an intention to abandon possession, it was not erroneous, upon the question of whether or not there was a prescriptive title to the entire tract covered by the deeds, for the court to direct a verdict in favor of the prescription.

(a) Nor was it necessary to submit the question to the jury where it appeared that one of the tenants at one time consulted counsel with a view of setting up adverse title to the lot, it affirmatively appearing that the tenant did not remove from the premises so as to be in a position to set up an adverse possession, and further that the tenant did never in fact set up adverse claim to the premises.

(b) Nor was it necessary to submit the question to the jury because the tenant returned for taxation and paid taxes on the property, it affirmatively appearing by uncontradicted evidence that the same was done under an arrangement with the landlord, and in consideration of being allowed the use of the property.

Submitted March 3,—Decided August 9, 1906.

Equitable petition. Before Judge Seabrook. Wayne superior court. January 31, 1905.

*John W. Bennett* and *Leon A. Wilson,* for plaintiffs in error.

*C. P. Goodyear* and *W. E. Kay,* contra.

ATKINSON, J. This is the second appearance of this case in this court. See *Roberson* v. *Downing Co., 120 Ga.* 833. The suit is to quiet title to land, for injunction, and other relief. Upon the trial in the court below, when the evidence was all in, and both sides had announced closed, the court directed a verdict in favor of the plaintiff, as follows: "We, the jury, find for the plaintiff the premises in dispute and costs of suit and cancellation of deeds of the defendants as prayed, and injunction be made permanent." The defendant moved for a new trial, upon the general grounds, and upon the ground that "the court erred in directing a verdict for the plaintiff without allowing counsel for defendant to argue said case before the jury, there being issues of fact upon which the jury should have been permitted to pass." The defendants in the court below are plaintiffs in error here, and in their briefs say: "There is but

one question in this case. Did the court commit error in deciding
as a matter of law that the defendants were bound by the statute of
prescription?" In support of their side of the question, they in-
sist that the evidence does not show such character of possession as.
would authorize the court to hold as a matter of law that a prescrip-
tion had been established, and, if the possession had been of. such.
character, there was a breach in the continuity of the possession
which would defeat prescription; and in connection with the con-
tentions already named, it was insisted that there was evidence
tending to show that the possession for a part of the time necessary
to complete the prescription was not in the right of the claimant,
but adverse to such right; that, the evidence not being mandatory
upon the points named, the issues should have been submitted to the
jury, and not determined by the court as a matter of law. No
other proposition being discussed in the brief for the plaintiffs in
error, under repeated rulings of this court, any other proposition
which may be involved in the motion for new trial will be treated
as abandoned and will not be considered. The report of the case
in 120 *Ga.* 833, sufficiently states the muniments of title relied upon
by the plaintiffs as color of title. On the question of possession
thereunder, the evidence fairly construed shows, that, by the loca-
tion and operation of a sawmill on the lot in dispute, Armitage was
in actual possession of a part of the tract under his deed to the
whole for about one year, commencing soon after his purchase,
March 11, 1881, and ending with his sale to McDonough, Feb. 21,
1882; that McDonough continued this sawmill possession for five
or six years, and sold to Burbage, Jan. 25, 1887. When McDon-
ough moved his sawmill away, Lary & Co., under Burbage, McDon-
ough's grantee, worked the entire lot for turpentine purposes, and
a few months after McDonough had moved his mill, Lary, in 1887,
as tenant of Burbage, moved upon the lot to live, and, in addition
to the turpentine operations, cultivated a field of about 20 acres on
the lot. From that time until the suit was brought in April, 1902,
Lary, and after his death the family of Lary, lived on the lot and
cultivated the fields, and for a part of the time worked the trees for
turpentine purposes, and sold cord wood and exercised other acts of
dominion. For a part of the time, other tenants of the plaintiff
worked the trees for turpentine. It appears that the possession of
Lary, and after his death the possession of his family, was as ten-

ants of the plaintiff and his predecessors in title.    Mrs. Lary testi-
fied that she never claimed the lot adversely to the plaintiff's claim,
but it does appear that at one time she consulted counsel with a
view of setting up a claim; also that she returned the property for
taxes in her own name.    She testifies affirmatively that she did not
set up a claim, and that she returned the lot and paid taxes under
an arrangement with Burbage, which she did in consideration of be-
ing allowed the use of the lot.    There was no evidence tending to
controvert the explanation given by Mrs. Lary as to why she paid
the taxes.    We may mention the points made by counsel in their
briefs in the reverse order.    There is not sufficient evidence to im-
peach the possession maintained by the plaintiff by the tenancy of
Mrs. Lary.    She unquestionably entered as tenant of the plaintiff's
predecessor, and never moved away so as to be in a position to set
up adverse title.    Her idea of claiming adversely was evidently
abandoned when she consulted counsel.    She testifies affirmatively
and without contradiction that she never claimed title.    Her ex-
planation as to why she returned and paid taxes, being reasonable
and uncontradicted, must be taken as true.    A verdict based upon
this evidence, impeaching the possession of the plaintiff, could not
stand, and it was not erroneous for the court, without the interven-
tion of a jury, to dispose of the point.    Under the evidence there
was no substantial breach in the continuity of possession.    The
only breach possible would be for the term of a few months in 1887,
following the removal of McDonough's mill.    But Mrs. Lary, after
testifying about the removal of this mill, says: *"Then* Lary & Co.
commenced turpentine operations on the lot, and in a few months
they moved on the lot to live."    McDonough's sale was in January,
1887.    The turpentine operations immediately followed, and they
moved on the lot in October of the same year, all being done under
Burbage.    If it be conceded that turpentine operations must be
submitted to the jury to determine whether they amount to adverse
possession, it does not follow that they may not be sufficient as a
matter of law to indicate an intention not to abandon an adverse
possession previously commenced.    Even in the absence of the tur-
pentine operations, the interval between the time of the removal of
McDonough and the entry of Lary by actual residence was not so
great as to raise the presumption of an abandonment of the posses-
sion.    There was, therefore, no evidence by which a verdict finding

12

a breach in the continuity of possession could have been sustained, and the court upon that point did not err in directing a verdict.

Leaving out turpentine operations, the possession was by actual occupancy of a part of the land by Armitage, then by McDonough in operating their sawmill, and afterwards by Lary by actual residence and by cultivating fields upon the tract. This actual possession of a part of the tract under color of title will be construed to extend to the limit of the tract as specified in the deed. It is not controverted that this character of possession was maintained; and it follows as a matter of law that there was possession of the whole tract. As to the character of possession, there was nothing in the case to be submitted to the jury, and upon that point the court did not err in directing the verdict. The possession being of the character prescribed by law, and there being no breach in the continuity, or impeachment of the good faith, and the same having been maintained for the requisite period, all of which being affirmatively established by uncontroverted evidence, the court did not, for any of the reasons assigned, err in directing a verdict for the plaintiff.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*