Northport Real Estate and Improvement Company, Appellant, *v.* Jeremiah Hendrickson, Respondent.

In an action of trespass commenced in 1891 these facts appeared: The parcel of land in question and a lot adjoining it on the south, known as lot 10, were in 1862 conveyed to S. The two pieces had prior to that, at times, been owned separately; thereafter they were continuously owned together and occupied and managed as a single tract; as such they were from time to time conveyed, and were so conveyed to defendant. In 1862 there was, a dwelling house on lot 10; this has since been occupied by the grantee of the whole tract, and no fence has separated the two parcels. A small orchard on the parcel in question has been improved and cared for by the owner of lot 10, who had the fruit therefrom; there were also some outhouses and a small garden upon it, and a fence was maintained on its northern line; there was also at one time a fence on its easterly line, a portion of which remained, the remainder having rotted down and disappeared; also a fence for a small distance on the westerly line. The northern part of the parcel was woodland, from which the owner of lot 10 annually cut wood for use at the dwelling house, and also cut some trees for sale. The owners of the farm of which the two parcels formerly formed a part, had not, for more than twenty years prior to the deed to defendant, entered upon or cut wood or timber from the disputed parcel, or exercised any dominion over the same. The alleged trespass consisted of cutting timber from the woodland. *Held*, that defendant had established title by adverse possession (Code Civ. Pro. § 370); that, in determining this question, the whole tract covered by defendant's deed must be considered as a single lot, and the actual possession of lot 10, and the use made of the residue, as subservient to that so possessed, gave to defendant and those under whom he claimed constructive possession of the disputed parcel.

Plaintiff, who showed a valid paper title by deed of the farm of which the lot in question was a part, claimed that it and its predecessors in title, were also in constructive possession of the woodland, and as they had the record title, their possession must prevail over that of defendant. *Held*, untenable; that, under the circumstances, it must be held that the owners of the farm were disseized.

(Submitted June 30, 1893 ; decided October 10, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 22, 1892, which affirmed a judg-

ment in favor of defendant entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John L. Hill* for appellant. Leaving out of consideration the question of adverse possession, the legal title to the premises in dispute was in the plaintiffs. (*Brown* v. *Volkneing*, 64 N. Y. 79; *Page* v. *Waring*, 76 id.; *Pope* v. *Allen*, 90 id. 208.) A constructive adverse possession cannot overlap the constructive adverse possession of the party holding the legal title; an adverse possession to ripen into title in this case must be what the law defines as actual possession, so much as is actually cultivated for twenty years or inclosed for twenty years. (*Jackson* v. *Vermilyea*, 6 Cow. 678; *Bliss* v. *Johnson*, 94 N. Y. 235.)

*Thomas Young* for respondent. The plaintiff claims that this piece in question should be regarded as two lots. But the undisputed facts show that such contention is without foundation, and the charge in this regard of the learned judge on the trial is correct. (Code Civ. Pro. § 370.)

Earl, J. This is an action of trespass commenced in April, 1891, to recover damages against the defendant for entering upon land claimed by the plaintiff, and cutting down and removing therefrom certain trees. Both parties claim title to the land on which the alleged trespass was committed. In 1839 Jesse Bunce owned a farm of about eighty acres of land, and he executed to Fannie and Amelia Bryan a deed of a piece from the southerly end of the farm, consisting of about one acre and a quarter, which deed was dated May 25th, 1839, acknowledged November 7th, 1839, and recorded January 31st, 1853. The defendant has a chain of title to this piece, by written conveyances under the Bryans, the deed to him having been executed and recorded in June, 1872. Subsequently to the deed to the Bryans, Bunce gave a deed of the whole farm, including the parcel above mentioned, to Samuel

P. Hart, which deed was dated November 2d and acknowl-
edged and recorded December 27th, 1839, and the plaintiff
claims the land described in that deed under Hart by sundry
mesne conveyances, the deed to it having been executed and
recorded in March, 1890. It thus appears that while the deed
to the Bryans was dated before the deed to Hart, it was not
acknowledged until five days after the deed to Hart was
dated, and was not recorded until many years after Hart's
deed was recorded. It is, therefore, conceded that the plain-
tiff has a perfect record title to the piece of land in dispute,
which must prevail over the claim of the defendant, but for
the title of adverse possession which he claims to have
established.

The sections of the Code applicable to this claim of adverse
possession are as follows : Sec. 369. " Where the occupant,
or those under whom he claims, entered into the possession of
the premises under claim of title exclusive of any other right,
founding the claim upon a written instrument, as being a con-
veyance of the premises in question   *   *   *; and there has
been a continued occupation and possession of the premises
included in the instrument   *   *   * or of some part thereof,
for twenty years under the same claim, the premises so
included are deemed to have been held adversely ; except
that where they consist of a tract divided into lots, the pos-
session of one lot is not deemed the possession of any other lot."

Section 370. " For the purpose of constituting an adverse
possession by a person claiming a title, founded upon a writ-
ten instrument, or a judgment or decree, land is deemed
to have been possessed and occupied in either of the following
cases :

" 1. Where it has been usually cultivated or improved.

" 2. Where it has been protected by a substantial inclosure.

" 3. Where, though not inclosed, it has been used for the
supply of fuel, or of fencing timber, either for the purposes
of husbandry or for the ordinary use of the occupant.

" Where a known farm or a single lot has been partly
improved, the portion of the farm or lot that has been left

not cleared, or not inclosed, according to the usual course and custom of the adjoining country, is deemed to have been occupied for the same length of time as the part improved and cultivated."

The facts about the adverse possession are as follows: Before any of the dates above given the farm of eighty acres extended southerly to Main street, and the owner of the farm had sold off lots bounded southerly on that street, which lots were one hundred and fifty feet deep and fifty feet wide on the street, and those lots commencing on the westerly line of the farm were numbered 10, 11, 12 and 13. The first three lots and half of lot No. 13 are southerly of and adjoining to the piece in dispute. In 1854 the owners of lot 10 and the disputed piece conveyed both lots to the same person, and that person owned the two lots as one parcel of land until January 8th, 1862, when lot No. 10 was conveyed by the owner of both lots to one Shadbolt, and the lots were thereafter owned separately until July 15th, 1862, when both lots had been conveyed to John Seaton. After that both lots were continuously owned together, and were from time to time conveyed as a single tract of land until the conveyance to the defendant in 1872, and were always occupied and managed as a single tract. During all the time there was a dwelling house upon lot No. 10, which was occupied by the owner of the whole tract, and there was no fence separating lot No. 10 from the disputed piece. At least forty years ago an orchard of about twelve apple trees was set out upon the southerly end of the disputed piece, which the owners of lot 10 have improved and cared for, and they have had the fruit thereof. They also had a chicken coop and hog pen on the southerly end of the piece, and for a short time a small garden in the northeasterly corner thereof. A fence was maintained on the northerly side of the piece, separating it from the balance of the eighty acres, and there was a fence at one time running the whole distance on the easterly line of the piece, and a fence for a small distance at the southerly end of the westerly line, and about one hundred feet of fence remained at the southerly end

of the easterly line, the residue having rotted down and dis-
appeared.    The northerly part of the piece — that part north-
erly of the orchard — was woodland, generally covered with
small forest trees. · The owners of lot 10 annually cut wood
from the woodland for use at the house, and also cut some·
trees for sale.    The owners of the farm never entered upon or
cut any wood or timber from the disputed piece during more·
than twenty years prior to the deed to the defendant, and'
never exercised any dominion over the same during that time.
Upon these facts, which are not substantially disputed in the·
evidence, the defendant bases his claim to adverse possession
of the disputed piece. .

We think the whole tract covered by the deed to the·
defendant must, in considering the adverse possession, be
taken as one single lot.    It had, for nearly thirty years prior
to the commencement of the action, been conveyed, held and
treated as one lot.    There was no division of the tract into·
lots, and it was described as a single tract or lot in the deeds·
of conveyance.    The disputed piece and lot ten were orig-
inally part of the farm, and were separated therefrom by dif-
ferent conveyances.    Must they forever, within the provisions·
of sections 369 and 370 above set out, be treated as separate
lots, or may they again become united?    Suppose a farmer·
buys a lot of one hundred acres for a farm and subsequently
adds to his farm one hundred acres by purchases from adjoin-
ing lots, and then for long years holds, occupies and uses the
two hundred acres as one farm ; and suppose further that it is
conveyed from time to time as one farm, describing it as such,.
can it be doubted that, within the meaning of those sections,
it is to be treated as a known farm and single lot, so that the·
actual possession of a part under a deed of the whole will
give the claimant the constructive possession of the whole ?'
In the case supposed, the farm has ceased to be divided into·
lots, and lot divisions no longer exist.    Suppose the owner of
a large tract divides it into lots and sells the lots and subse-
quently re-purchases all the lots, and then manages and con-
trols it as one lot and conveys it as one lot, is it one lot or

many lots within the meaning of those sections? We do not undertake to define the precise scope and meaning of the words "a known farm or a single lot," found in section 370, but we are satisfied that the whole tract described in the deeds constituting the defendant's chain of title is a single lot. This construction of the statute is different from that given in the court below, where it was held that the disputed piece must be recognized as a separate lot. But the case was submitted to the jury and disposed of in the court below upon a construction of the statute less favorable to the defendant than he was entitled to have adopted, and nothing stands in the way of now giving the statute its proper meaning and effect.

Therefore, the actual possession of that portion of the tract upon which the house stood and of the grounds about it, with the improvement of the orchard and the use of the woodland, gave the defendant and those under whom he claims the constructive possession of the remainder of the tract. The part not actually possessed was used with and was subservient to that so possessed, and thus the terms of the statute and the rules of law on the subject were satisfied. (*Miller* v. *Long Island R. R. Co.,* 71 N. Y. 380; *Thompson* v. *Burhans,* 79 id. 93).

But the plaintiff contends that it and its predecessors in the title of the farm were also in the constructive possession of the woodland where the alleged trespass was committed, and as it and they at the same time had the true title, this constructive possession must prevail over that of the defendant and his predecessors who had no valid paper title; and its counsel cites to uphold this contention, *Jackson* v. *Vermilyea* (6 Cowen, 678); *Simpson* v. *Downing* (23 Wend. 319); *Finlay* v. *Cook* (54 Barb. 9); *Hall* v. *Powel* (4 Serg. & R. 465), and other cases. But we think the principles laid down in these cases are not fully applicable to this case. Here for nearly thirty years before the plaintiff took its title to the farm the tract claimed by the defendant had been held, occupied and managed, as above stated, as a separate tract. During all that time the owners of the farm never exercised any

dominion over, or any acts of ownership upon the tract. It was separated from the farm by a fence on the northerly side thereof and also to some extent on the easterly and westerly sides thereof. The rights of the defendant and his predecessors in the title seem to have been acquiesced in and they alone exercised dominion and acts of ownership over the tract. Under such circumstances we cannot say that the constructive possession of the owners of the farm overlapped and destroyed the constructive possession by the defendant and his predecessors of the piece in fact separated from the farm; and we, therefore, think that the latter must be held to have been in the constructive possession of the whole of that piece and that the former were disseized thereof.

This case is not free from doubt, but we think the best reasons can be assigned for the affirmance of the judgment, and it should, therefore, be affirmed.

All concur.

Judgment affirmed.