CATHERINE M. CAREY, Plaintiff, *v.* RICHARD RILEY, Defendant.

Supreme Court, Nassau Special Term, July, 1923.

**Specific performance — evidence insufficient to establish marketable title by adverse possession.**

A person should not be compelled to take title to property where he must defend the title by parol evidence.

In an action for specific performance where the vendor's title depends upon adverse possession more convincing proof of adverse possession must be produced to establish the marketability of the title than would be necessary to defend the title if directly attacked by some adverse claimant.

Where in an action for specific performance plaintiff bases her title upon adverse possession and the evidence shows that she cannot depend on the inclosure of her property or the cultivation or possession thereof for a period of twenty years, and where there is some question as to an easement and as to a description, defendant should have judgment dismissing the complaint on the merits and the recovery on his counterclaim for his down payment, with interest and taxable costs.

SUIT for specific performance.

*Hirsh, Newman & Reass* (*Benjamin Reass* and *Charles G. Stevenson*, of counsel), for plaintiff.

*Clarke & Frost* (*Edward L. Frost*, of counsel), for defendant.

BENEDICT, J. This is an action for specific performance by vendor against vendee. The vendee defends on the ground of alleged defects in vendor's title.

Plaintiff is unable to trace title back to the original grants, and so must depend on proof of adverse possession. The evidence by which adverse possession is sought to be established does not satisfy me that there has been adverse possession by plaintiff and her predecessors for an uninterrupted period of twenty years. In 1888 and 1889 conveyances were made to John J. Pollok purporting to convey to him three separate but adjoining parcels of land. Such title as he had to each parcel came to him from a separate source. In 1888 he caused a map of the whole tract to be made and filed, showing the property divided into blocks and lots, and showing various streets thereon. From this map it appears that his property was located on the northerly side of the Woodbury road, between Hicksville and Huntington, and on the westerly side of the intersecting road known as the Syosset or South Oyster Bay road, or Eastern boulevard. It extended for a considerable

distance along each of these roads, except where it was interrupted on the Woodbury road by what is known in this action as the Webbenhorst property. The premises involved in this action constitute the northerly portion of the Pollok tract, lying between the Syosset road and Pollok place, so called.

Soon after Pollok acquired title he caused a wire fence to be built along the easterly line of the property on the Syosset road. It appears that it had been customary for persons to drive over these lands, which were wholly uncultivated; and the purpose of the fence was apparently to prevent this usage. The fence was for a time repeatedly broken down, and then patched up again, but finally, it would appear, Pollok abandoned it. The evidence is not wholly clear and is to some extent conflicting, as to just how much of the fence was destroyed, but my conclusion is that there is not sufficient to show that any substantial fence was maintained along this side of the property for an uninterrupted period of twenty years. The northerly line was marked by a substantial fence built and maintained by Blyman, the next owner to the north. There is no evidence of any fence or inclosure on the westerly side, except one extending part of the way, which existed only for a few years. There is evidence that there were some fences and hedges on the southerly side of the Pollok tract along the Woodbury road. I think, therefore, plaintiff cannot depend on the inclosure of the property as showing adverse possession. *Pope* v. *Hanmer*, 74 N. Y. 240.

As to cultivation and improvement, it appeared that about 1890 or 1891 Pollok built a house on the tract, near the Woodbury road, and trees were set out along the Woodbury road and for a short distance on Pollok place. A garden was cultivated near the house, and there were also fruit trees there. No use appears to have been made of the part of the premises involved in this action, either for farming or cutting grass, or at that period for pasturage or any other purpose. A building was constructed on Pollok place north of Pollok's house and used for a time as a medicine factory. This, I take it, was on a parcel of property conveyed by Pollok to one Staden in 1891, and subsequently, by several mesne conveyances, conveyed to plaintiff. The use of this building was discontinued as a medicine factory after five or six years. The building was afterward used intermittently for dwelling purposes, but by whom does not appear, and after plaintiff acquired title in 1906 it was cut in two and one-half moved down near the corner of the Woodbury and Syosset roads, while the other half either remained where it was, or was moved to the north of its former position. Both parts are now used as dwellings.

Pollok conveyed all of the premises not conveyed to Staden as aforesaid to one Julie Julian in 1895. He afterward married her, and after his death she conveyed the same premises to Oscar L. Schwenke in 1906, and he, with his wife, conveyed to plaintiff. Pollok seems to have left the neighborhood about 1903 or 1904 and there is no clear evidence of possession of the part of the tract about the house after his departure, and there is no evidence at all of possession of any part of the tract during the interval between the conveyance by Mrs. Pollok to Schwenke, and his conveyance to plaintiff. Assuming then that Pollok's actual occupation of the land where his house was built and the ground or close right around it was sufficient under the statute to constitute adverse possession of the whole tract, which if long enough continued would ripen into title (see *Northport Real Estate & Imp. Co.* v. *Hendrickson*, 139 N. Y. 440; *Stillman* v. *Burfeind*, 21 App. Div. 13), it appears that there is no evidence that such possession continued without interruption for twenty years.

It is to be borne in mind that in an action of this kind for specific performance, where the vendor's title depends upon adverse possession, more convincing proof of adverse possession must be produced to establish the marketability of the title than would be necessary to defend the title, if directly attacked by some adverse claimant. In *Crocker Point Assn.* v. *Gouraud*, 224 N. Y. 343, Judge Pound said: " Titles by adverse possession are in disfavor with persons contemplating the purchase of property and with the courts. (*Heller* v. *Cohen*, 154 N. Y. 299, 311; *Gorman* v. *Gorman*, 40 App. Div. 225; affd., 159 N. Y. 571.) It was said in *Simis* v. *McElroy* (160 N. Y. 156, 161, 162) that a party ought not to be compelled to take title to premises where he must defend his title by parol evidence. There are, however, cases where title by adverse possession has been upheld on satisfactory undisputed parol evidence. (*Freedman* v. *Oppenheim*, 187 N. Y. 101.) Such titles must command unqualified respect and a mere claim, unfortified by proofs establishing without dispute that possession has been clearly adverse for the required period, is not enough to move the courts in hostility to an unwilling vendee. (*Shriver* v. *Shriver*, 86 N. Y. 575, 585.)"

In other cases it has been said that the standard of certainty was " that the proof should be so clear, as to the ability of the vendor to convey a title, as to render it the duty of a court to instruct a jury to find the fact of its existence." *Ottinger* v. *Strasburger*, 33 Hun, 466, 469; affd., 102 N. Y. 692; *Shriver* v. *Shriver, supra*, p. 585. I think the proof falls short of these requirements. Plaintiff claims to be able to trace back her title to part of

the property in question to the original grant, but I am not satisfied with the proof in support of this claim, and in any event that does not help as to the rest of the property.

Another objection of some substance is raised, namely, that the owner of the so-called Diamond lots has an easement of right of way over the streets, or some of them, shown on the Pollok map. Pollok place, running northward through the Pollok tract from the Woodbury road, and a cross street known as Liszt street, are the only streets shown by the evidence to have been actually used as such, although they did not, I understand, become public streets. Pollok place has no opening into any public road or street at its northern end. The conveyance by Pollok to Diamond of four lots at the southeasterly corner of Pollok place and Queen street, as shown on the map, gave the grantee, in my opinion, an easement of right of way over the strip of land designated as Queen street, to the Syosset road or Eastern boulevard. For all that appears such easement may still exist.

Another doubt arises by reason of an alternative description in a deed claimed to cover part of the premises involved in this action. This alternative description places the property conveyed to the south of the Woodbury road, although it is conceded that the first description covers part of the premises herein involved.

It also appears that in 1855 one George Velsor caused to be made, and in 1856 filed, a map covering part of the property involved in this action. He claimed to own the property shown on the map, and made nineteen deeds to various persons of lots lying within the lines of the property in question. They were all dated in 1855 and recorded at various times up to 1888. There is no record of any conveyance to Velsor, and no evidence that any of the grantees entered into possession of the premises described in the said deeds, except in the case of what is known as the Webbenhorst property, which is outside the property in question in this action.

Taking all these circumstances together, I consider the title offered by the plaintiff to be of too dubious a character to justify a court of equity in declaring it to be marketable and requiring a vendee to accept it.

Judgment for defendant against the plaintiff dismissing the complaint on the merits, and for the recovery of $1,167 on the defendant's counterclaim, with interest on $1,000, the amount of the deposit on the contract, from the date of such deposit, together with taxable costs. Submit decision, judgment and requests to find within five days.

Judgment accordingly.