JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* ARTHUR D. HARRIS and Others, Respondents. (Action No. 1.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* ARCHIBALD CRAIG, as Administrator, etc., of THERESA CRAIG, Deceased, and Others, Respondents. (Action No. 2.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* ADA ANDERSON and Others, Respondents. (Action No. 3.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* NICOLA BARTOLINI and Others, Respondents. (Action No. 4.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* ROBERT G. WARD, as Administrator, etc., of EUGENIE C. WARD, Deceased, and Others, Substituted in Place of EUGENIE C. WARD, Deceased, and Others, Respondents. (Action No. 5.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* DAVID H. BAILEY and Another, as Executors and Trustees, etc., of FANNY ZEH, Also Known as Mrs. FANNY ZEH, Also Known as FANNIE ZEH, Deceased, and Others, Respondents. (Action No. 6.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* MARY SIEGAL and Others, Respondents. (Action No. 7.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* MARGARET BARTOLINI and Others, Respondents. (Action No. 8.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* FRANK HELSING and Others, Respondents. (Action No. 9.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* HANNAH READ and Others, Respondents. (Action No. 10.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* HELEN BARTOLINI and Others, Respondents. (Action No. 11.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* JANE CUNNINGHAM, Also Known as JENNIE CUNNINGHAM, Respondent. (Action No. 12.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* ANTHONY STARACE and Another, Respondents. (Action No. 13.)

JOHN T. CLARK REALTY CO., INC., JOHN T. CLARK, JR., and FLORENCE H. CLARK, Appellants, *v.* THERESA CANTWELL and Others, Respondents. (Action No. 14.)

Second Department, February 11, 1938.

*Leslie Clifford*, for the appellants.

*Clarence F. Corner* [*Gilbert F. Regan* with him on the brief], for the respondents Harris, Craig, as administrator, etc., Anderson, Nicola Bartolini, Ward, as administrator, etc., Bailey, Siegal, Margaret Bartolini, Helsing, Read, Helen Bartolini, Cunningham and Starace.

No brief for the respondent Cantwell.

HAGARTY, J. Plaintiffs have brought these actions in ejectment to recover fourteen separate parcels of land, one of which is held by each defendant. The property involved lies within the boundaries of two square blocks in the section of Brooklyn known as Coney Island. The first of these blocks, hereinafter referred to as the "Hart" block, is between West Thirty-third and West Thirty-fifth streets, on the east and west respectively, and Canal avenue on the south and Bayview avenue on the north. The second block, hereinafter referred to as the "Haldane" block, lies immediately to the west of the Hart block and is bounded on the west by West Thirty-sixth street.

Respondents trace their paper title to two deeds from the town of Gravesend to Tracey, dated May 1, 1890. By reference to a map known as the "Kowalski Map," title was conveyed by those deeds to lots 46 and 47, as delineated on said map, running from the ocean on the south to Gravesend bay on the north. It is undisputed that the Hart block is within the lines of lot 46 as prolonged northerly into the area shown on the Kowalski map as land under the waters of the bay, subsequently filled in. So, also,

the Haldane block lies within the lines of lot 47 as prolonged northerly. Although the town had purported to grant water rights to Tracey, it appears without dispute that such grants were invalid, but such invalidity was not established by judicial determination until our decision in 1921 (*Nevins* v. *Friedauer*, 198 App. Div. 250).

In 1891 plaintiffs' predecessor in title, Curnow, owned a parcel of property fronting on the northeasterly shore of Gravesend bay, which parcel was diagonally and northeasterly across the waters of the bay from the land now in dispute. In December of that year the town of Gravesend granted to Curnow a tract of land under water adjacent to his upland parcel. That tract, 121 feet wide, extended across the bay some 4,100 feet to a line which had been recommended by a special board, in 1875, as the pierhead line north of the upland on the southerly boundary of the bay. The description is tied in with a map showing grants under water by the town as made by Voorhies, a civil engineer and surveyor, on September 30, 1891.

My opinion is that appellants satisfactorily established that the parcels in question were included within the bounds of the Curnow grant. It was sufficient to show that such parcels were within the grant as shown on the Voorhies map. It was immaterial, for example, whether or not the pierhead line as shown on the map was ever, in fact, established or adopted. Nor does examination of the exhibits reveal any proof that, at the time of the making of the Curnow deed, there was in existence a pierhead line which would serve to limit the grant as it ran from the upland of the grantee, assuming that a pierhead line would have that effect.

Nevertheless, the learned Trial Term justice was correct in his ultimate determination, based on findings, that the respondents acquired good title by adverse possession and that the deeds running to appellants were void under section 260 of the Real Property Law.

Title to the Haldane block passed from Tracey to Osborn in 1890, to Buschman in 1895, to Haldane on September 20, 1904, by deeds purporting to convey lot 47 and adjacent lands under water in Gravesend bay. As to the other block, a conveyance of lot 46, with rights to adjacent lands under water, was made by Tracey to Lizzie C. Ferguson, afterwards known as Hart, on June 20, 1890.

Paper title under the Tracey chain was, therefore, in Haldane and Hart in 1906. In the spring of that year one Frank Helsing built a shack in the Haldane block just south of the Curnow grant. At that time all this block was filled in and the ground was level

to West Thirty-third street. There was a sidewalk along the westerly side of West Thirty-fifth street. Helsing rented the Haldane block from a real estate firm, but he understood at the time that the owner was "Halding," and Haldane gave him a receipt for his money. Thereafter Helsing was given the privilege of putting up shacks on this block and, as he did so, he paid as he went along. From all of the testimony it might be inferred that Helsing was in fact a squatter, but, nevertheless, the learned trial court justice could find, as he undoubtedly did, that in improving this block Helsing did so as the tenant or lessee of Haldane, the owner. It also appears that Helsing rented the Hart block from Mrs. Hart in 1908, and in accordance therewith put up shacks on that block, scattered about on different portions. Eight shacks were put up the first year, and more thereafter. These were continuously used by him from 1908 to 1918, at which time Neptune North Improvement Corporation bought the block, filled it to grade, generally improved it, and from 1918 to the commencement of this action in 1933 sold lots in such manner that adverse possession cannot be consistently questioned.

Returning to consideration of the Haldane block, Helsing built, in 1907, a clubhouse just north of his original shack, and that clubhouse was used by shack owners, even during the winter months. In 1910 or 1911 Helsing built his own house at about the center of the Curnow grant in that block. This property he later bought in 1921. During the time of his building activity, there were between twenty and twenty-four of his shacks on the two blocks. In 1910, on the application of Somerville, a real estate agent for Haldane, a bulkhead was built between West Thirty-fifth and West Thirty-sixth streets. Other witnesses corroborate Helsing to the effect that all the Haldane block and the most northerly lot within the Curnow grant of the Hart block were upland in or about the year 1908. In 1906 Haldane, through Somerville, plotted the Haldane block and, from 1907 to 1909, sold off the block in small plots. Respondent Ward's intestate purchased one of these lots on May 3, 1919, after mesne conveyances from Palumeri, to whom Haldane conveyed on February 26, 1908. Respondent Helsing purchased on February 19, 1921, after mesne conveyances from Ward, to whom Haldane conveyed on March 4, 1907. Respondent Siegal purchased on March 13, 1928, by conveyance from one Alfred Siegal, who purchased on September 30, 1921, after mesne conveyances from Somerville Realty Company to which Haldane had conveyed on January 31, 1908. Respondent Cunningham purchased on February 10, 1931, after mesne conveyances from Somerville Realty Company. Respondent Cantwell

purchased from Agnes Somerville in 1917, and had rented and improved the plot continuously since 1909.

The remaining nine plots are in the Hart block, which, in its entirety, was conveyed by Hart to Neptune North Improvement Corporation on July 31, 1918, by deed recorded September 4, 1918. Harris purchased on March 13, 1919. Read purchased on March 14, 1919. On July 26, 1921, Craig purchased one lot from Mackey, to whom Neptune North Improvement Corporation had conveyed on March 14, 1919. Another lot was purchased by Craig from Oliver on March 24, 1921, through a mesne conveyance after Helsing had purchased it on December 27, 1919. Margaret Bartolini purchased on October 4, 1926, after mesne conveyances from Lizzie Bartolini, to whom Neptune North Improvement Corporation had conveyed on April 4, 1919. Respondent Bailey's testatrix purchased on May 21, 1929, through mesne conveyances from Howard, to whom Neptune North Improvement Corporation had conveyed on March 17, 1919. Starace obtained a referee's deed on May 9, 1933, after Neptune North Improvement Corporation had conveyed the plot to Wolkowitz on April 4, 1919. On October 16, 1925, Anderson purchased from Hare, to whom Neptune North Improvement Corporation had conveyed on April 17, 1919. Helen Bartolini purchased on April 11, 1922, from her husband Tilyou, to whom Neptune North Improvement Corporation had conveyed on July 15, 1919. Nicola Bartolini purchased from Neptune North Improvement Corporation on May 26, 1919, and conveyed to Maria Bartolini on September 18, 1928.

I am of opinion that the requisites of title by adverse possession for the continuous period of twenty years prior to the commencement of these actions in August, 1933, were proven. All of the present respondents testified to the expenditure of substantial sums in improving the properties, and to their lack of knowledge of the claims of the appellants until commencement of the actions. Haldane and Neptune North Improvement Corporation undoubtedly went to great expense in filling, grading and improving. For forty-two years prior to the commencement of these actions, neither Curnow nor his successors in title made any claim arising out of the grant, consideration for which appears to have been the sum of ten dollars. During all of this time the respondents and their predecessors paid taxes on the property.

Section 37 of the Civil Practice Act, in so far as it is applicable here, provides that, where the occupant, or those under whom he claims, entered into possession under claim of title founded upon a written instrument, and there has been a continued occupation and possession for twenty years, the premises so included are

deemed to have been held adversely, except that, where they consist of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot. Of course, the so-called title under which the adverse possessor claims need not be a good title. If it were a good title he would not claim by adverse possession. Colorable title is sufficient. (*Sands* v. *Hughes*, 53 N. Y. 287; *Towle* v. *Remsen*, 70 id. 303, 316.)

Further, it would seem that the act of Neptune North Improvement Corporation and of Haldane in plotting the two blocks is not helpful to the appellants. On the contrary, this was an act of dominion. Previously, the two blocks were entities, and possession and occupation of part was the possession of the whole block. (*N. R. E. & I. Co.* v. *Hendrickson*, 139 N. Y. 440.) After the lots were sold to the individual lot owners, the present respondents trace a continuous chain of title. Under their respective deeds, a continuance of possession by the preceding lot owners is presumed up to the time of conveyance. (*Bennett* v. *Kovarick*, 23 Misc. 73; affd., on opinion of Special Term, 44 App. Div. 629.) While by virtue of possession of a particular lot alone, after the subdivision, one lot owner could not claim title to any other lot by adverse possession, that is not the situation here. The very authority which appellants cite (*Pope* v. *Hanmer*, 74 N. Y. 240) holds that constructive possession will suffice to establish title by adverse possession where there is a claim of title under a written instrument, but that such constructive possession will not suffice where the written instrument does not describe the disputed property. In my opinion, the showing of a chain of title commencing in 1906, with acts of dominion and possession, was ample.

So, too, it is my opinion that the learned trial court justice was correct in holding plaintiffs' deed to be void under section 260 of the Real Property Law. The deed from Curnow to plaintiff John T. Clark was made on August 17, 1917. Thereafter and on December 8, 1917, that plaintiff conveyed to plaintiff John T. Clark Realty Co., Inc., and on January 5, 1921, that plaintiff conveyed to plaintiff John T. Clark, Jr., who conveyed to plaintiff Florence H. Clark on January 10, 1921. On April 7, 1921, this plaintiff reconveyed to her husband, who, in turn, reconveyed to her on September 6, 1925. Each of these plaintiffs seeks judgment, but we are actually concerned with the validity of the deed to John T. Clark on August 17, 1917. If that deed was void, then the subsequent grantees did not acquire good title. At that time, Mrs. Hart, as shown, was in actual possession of the Hart block, as were Helsing and Cantwell, either as owner or tenant of Haldane within the Haldane block. As to the plots of the remaining respond-

ents, Ward, Siegal and Cunningham, the showing of the possession of the predecessor in title, Haldane, with actual occupancy by him, as evidenced by the improvements he had effected, was sufficient.

For the foregoing reasons, judgment for the defendant in each of the fourteen actions should be affirmed, with costs to respondents jointly, except respondent Cantwell, as to whom the judgment should be affirmed, with costs.*

Present — HAGARTY, CARSWELL, JOHNSTON, ADEL and TAYLOR, JJ.

Judgment for defendant in each case unanimously affirmed, with costs to respondents jointly, except respondent Cantwell, as to whom the judgment is unanimously affirmed, with costs.*

* The decision and opinion handed down on Feb. 11, 1938, were amended on Feb. 18, 1938, on the court's own motion, to read as herewith published.— [REP.